## Lewis Paint and Glass Company v. Washington County.

*Public officers—County controllers—Right of controller to intervene in suit against county—Acts of May 6, 1909, June 27, 1895, and March 27, 1913, P. L. 10—Constitutional law—Title of act.*

1. Sections 10 of each of the Acts of May 6, 1909, P. L. 434, and June 27, 1895, P. L. 403, relating to the participation of the county controller in the award of public contracts, are not unconstitutional because their provisions are not indicated in the titles of the acts.

2. The use in the titles of the acts of the term "county controller" was of itself sufficient to put all persons upon inquiry as to the measure of control over the business of other offices which the bill proposed to vest in the controller, the checks upon the business methods thereof to be established, and the proposed means of rendering the same effectual.

3. Where a suit is brought against a county, and such suit involves alleged illegal acts of the county commissioners in awarding a public contract contrary to the Controller's Act, and the commissioners do not defend the suit, the county controller may intervene in the suit on behalf of the county.

Petition of county controller to intervene.    C. P. Washington Co., May T., 1926, No. 30.

*Hamilton & Pipes*, for plaintiff.

*A. M. Linn*, County Solicitor, and *Meyer Goldfarb*, for controller.

BROWNSON, P. J., Aug. 30, 1926.—There was some discussion at the argument of the right of taxpayers to intervene in a suit against a county, and authority was cited to show that the Act of March 23, 1877, P. L. 20, does not apply to actions against counties. It was thereupon stated by the petitioner's counsel, and the statement is repeated in his brief, that the present petition is made in the character of county controller exclusively, and that the Act of 1877 is in no way involved in the case.

Some citation of authorities has been made, also, to show what sort of an interest a party must have in order to warrant an order allowing him to intervene as a party, *pro interesse suo*, in a pending action, but we do not think these decisions throw any light upon the questions here raised.    The county controller is not asking to intervene for the purpose of defending any interest personal to himself.    He is asking to be permitted, acting in the name and on behalf of the county, to defend it against a claim for what he alleges is in part not a legal and just debt; and he bases his application upon the position that the provisions of the statute under which his office exists invest him with functions, the proper performance of which makes necessary the doing what he now seeks to do, and that by the force and effect of that statute he has a right, in such a case as the present, to appear and defend the county against the suit.    Although in his prayer he uses the word "intervene," what he is asking for is not intervention as a party in the strict, technical sense of the term; it is to be permitted to represent the party defendant—the county.

As we have said, the petition is grounded upon the provisions of the County Controller Act.    The allegation is that parts of the moneys sued for are the price of supplies purchased upon contracts made in violation of section 10 of the act, and that if the provisions thereof had been complied with, by letting the contracts after competitive bidding, the supplies could have been purchased at a considerably smaller cost to the county.    By the demurrers, the allegations made are admitted for present purposes.    It appears to be agreed by counsel on both sides that in order to dispose of this matter it is necessary to pass upon the constitutionality of the 10th section.    It is claimed to be

unconstitutional for the reason that the provisions of section 10 are not covered by the title.

The office of county controller was established in Washington County in pursuance of the Act of May 6, 1909, P. L. 434. Subsequently, the Act of June 27, 1895, P. L. 403, was amended by the Act of March 27, 1913, P. L. 10, so as to make it applicable to all counties with a population of 100,000 or over, so that this county is embraced in the class to which by its terms it applies. Whether we should say that the office is now governed by the Act of 1909 or by the Act of 1895 (as bearing upon which question, see Com. v. Moore, 255 Pa. 402) is immaterial, because the sections of the two acts which deal with the duties, functions and powers of the controller, and with the manner in which other offices shall be adjusted to the system of supervision to be exercised by the controller, are identical in their numbering and wording, and, so far as involved in the question raised, the language of their titles is identical. If section 10 of one of these acts offends against section 3 of article III of the Constitution, so also does section 10 of the other act, and vice versa.

Is, then, section 10 of the act (either act) constitutional?

The argument made against its constitutionality, on the ground that it goes beyond the scope of the act as set forth in its title, is that, whereas the title says nothing about any diminution or limitation of the powers of the county commissioners, this section purports to take away from them powers with which they were invested when the act was passed, they having had the right previously to enter into oral contracts involving any amount of money without inviting bids, whereas this section prescribes that contracts amounting to more than $100 shall be let after advertising for bids, to be done by the controller, that the bids shall be received by the controller, and shall be opened in his presence and the contracts awarded, and, when awarded, such contracts shall be entered into in writing and immediately be filed with the controller. This argument, if valid, and if logically applied, would strike down a number of features contained in the act. For example, the provision in section 13 that warrants for the payment of money out of the county treasury shall not be honored unless countersigned by the county controller would have to fall. Previously, the commissioners had the power to issue such warrants over their own signatures alone without the assent of any other officer, and a warrant signed by a majority of them not only authorized the treasurer to pay the sum specified, and operated as a protection to him in making the payment, but made it his legal duty to do this; and this section declares that warrants shall not be valid and shall not be paid without the controller's countersignature, thus limiting the powers and authority of both the commissioners and the treasurer, neither of whom is mentioned in the title.

In our opinion, this argument is not sound. Nothing is better settled in the domain of constitutional law than the principle that it is unnecessary that the title of an act shall embrace an index of its contents. All that the Constitution requires is that but one subject shall be dealt with, and this subject shall be clearly stated in the title. When this requirement has been complied with, any legislation, however multifarious its details may be, that is so germane to the subject-matter thus stated as to be prima facie likely to be included in an act dealing with the specific subject, by reason whereof all persons interested are put upon inquiry as to its presence or absence, will be held to be in conformity with this constitutional provision, provided the statement of the title is not such as to make it misleading. The subject of this act is the office of county controller. The title states that the act provides for

the establishment of this office and prescribes the duties of such controller. What sort of legislative provisions would a person who read this title expect to find, or think likely to be found, in the body of the bill?

The word *controller*, which is sometimes written "comptroller," has a well recognized meaning. In 12 Corpus Juris, 370, comptroller is defined as "a public officer charged with certain duties in relation to fiscal affairs," and the definition given in Bouvier's Law Dictionary (8th ed.), 577, is: "An officer of a state, or the United States, who has certain duties to perform in the regulation and management of the fiscal matters of the government under which he holds office." In 13 Corpus Juris, 842, the meaning, in modern law, of the word *controller* is said to be: "An officer who has the inspection, examination or controlling of the accounts of other officers; one who keeps a counter-register of accounts; a supervising officer of revenue, invested with many powers, among which is the examination and allowance of claims against the state; an auditor. The official name implies recognized duties appurtenant thereto." In more modern times it has become common to have city and county controllers, and this has long been so in Pennsylvania. County controllers were many years ago established in Philadelphia and Allegheny Counties; then, in 1895, they were provided for counties having 150,000 inhabitants: Act of June 27, 1895, P. L. 403; and by the Act of May 6, 1909, P. L. 434, it was provided that the office might be established in any county upon the petition of a certain number of electors. Finally, in 1913, the Act of 1895 was amended so as to make it apply to all counties with a population of 100,000 or over. Universally these county controllers have been given functions in connection with the fiscal affairs of the county, identical with, or similar to, those prescribed in the Acts of 1895 and 1909. The official title, county controller, *ex vi termini*, imports, and did import at the time that the Acts of 1895 and 1909 were passed, that the officer designated by it is to have a general supervision and control of the fiscal affairs of the county and of the accounts and acts (relating to the collection, receipt, custody, management and expenditure of public moneys of the county) of the other officers charged with these functions. When the office of controller is established, necessarily the officers whom he is to supervise must be required to adjust the manner in which their offices are executed to this supervision to such an extent as to render possible the performance by the controller of the functions appertaining to his office. Therefore, regulations requiring other officers to follow, in the exercise of their powers, certain business methods which are essential to the proper functioning of the office of controller in the matter of safeguarding the county's fiscal interests are necessarily incidental and germane to the establishment of this office. They are essential to the workability of the controllership system. And the use in the title of the term county controller was of itself sufficient to put all persons upon inquiry as to the measure of control over the business of other offices which the bill proposed to vest in that officer, the checks upon the business methods thereof to be established and the proposed means of rendering the same effectual.

It is to be noted that the act does not abolish or take away the power of the county commissioners to make contracts. They are still the organ of the county for the purpose of making such lawful contracts as they, in the exercise of their discretion, deem necessary and advisable; but the form and manner in which they shall do this are regulated by section 10, with a view to enabling the controller to have such oversight and information as would be necessary for the accomplishment of the objects of the system of financial supervision established by the statute. The words by which it is directed that

Lewis Paint and Glass Company v. Washington County.

the controller shall advertise for bids, when directed by the commissioners, "if he approve the purpose of the proposals invited," were not intended to mean, and should not be construed as meaning, that he is given an absolute and arbitrary veto upon' action proposed to be taken by the commissioners. Their meaning, as we construe them, in accordance with the general scheme of the act, is that he is to approve or disapprove the purpose for some legal reason. For example, if the proposal were to enter into some contract creating a liability which could not be met out of current revenues and would involve an illegal increase of indebtedness, or if the purpose were in any other way or for any other reason an illegal one, he would be justified in refusing to advertise. But if he should undertake to disapprove, and should refuse to advertise, for the mere reason that his judgment as to what is expedient and for the public good differs from that of the commissioners, he would promptly be compelled by mandamus to carry out the direction of the commissioners to advertise, just as the countersigning of a warrant has been compelled by mandamus when there was no legal reason for refusal: Com. v. Underwood, 269 Pa. 36. In Zane v. Washington County, No. 102, August Term, 1916, McIlvaine, P. J., stated his view of the relations between those two offices as follows: "Neither can the controller review the work of the commissioners and veto what they have lawfully and honestly done simply because, in the exercise of his best judgment, he has arrived at a different conclusion from what they did. It is only where the county commissioners do something that is unlawful or something that is tainted with fraud or dishonesty that the controller has the veto power. In all things regularly and lawfully done by the commissioners his duty in approving what they have done is strictly a ministerial and not a judicial act. He cannot review the discretion vested in them in disposing of the business that comes before them, and it is an impertinence on his part to undertake to do so. . . . The controller has no right to object unless something unlawful or illegal has been done."

We think the Controller Act, reasonably construed, does not, in so far as it touches the office of the county commissioners and other county offices, go beyond such regulation of the manner of doing business as is germane to the subject and purpose indicated in the title, this being an incidentally necessary adjustment required for the purpose of adapting the previously existing county government to the controllership scheme established by the act. We, therefore, conclude that section 10 is not unconstitutional.

This conclusion is supported by the following considerations: In Lloyd v. Smith, 176 Pa. 213, decided in 1896, the constitutionality of the Act of June 27, 1895, P. L. 403 (identical in its title and terms with the Act of 1909 so far as relating to this question), was raised and passed upon. Among the objections made to the act in appellee's brief was this: "8. Because the title does not give sufficient notice of its contents." The Supreme Court, reversing the court below, held the act constitutional, and directed that an injunction issue restraining the county commissioners from disregarding the act in several particulars. Following this, the case of Com. v. Rentz, 20 Pa. C. C. Reps. 568, 571, decided in 1898, sustained a conviction of county commissioners for a misdemeanor in office committed by the letting of contracts in violation of section 10 of the act, overruling the defence that this section is unconstitutional. From that time until now we do not find any reported case in which the constitutionality of section 10 has been questioned. For practically thirty years this section has been recognized and acted under as valid. Under these circumstances (even if we should assume that the validity of sec-

tion 10 is still open to question because, while Lloyd v. Smith declared the Act of 1895 constitutional, this particular section is not shown to have been specifically considered by the Supreme Court), it would require very strong and compelling reasons to lead to a decision at this late day construing the act in such a way as to render this section unconstitutional. We think we have said enough to indicate that reasons of this character do not exist.

In the statement of his reasons for vetoing a bill, passed by the Legislature of 1923, which proposed to invest county controllers with the absolute and unconditional right to defend any and all suits brought against their counties, the Governor said that county controllers are "a check upon the action of the commissioners, and should . . . be permitted to intervene, and no doubt can do so, in any proper case." The questions now for determination are whether, along the line of the thought expressed by the Governor, the act of assembly constitutes the controller, in his official capacity, as (so to speak) an *amicus comitatus*, or next friend of the county, such as it would be proper to hear on behalf of the county in litigation, *when this appears to be necessary in order effectually to accomplish any of the aims and purposes of the controllership system*, and, if so, whether the present is such a case.

Unquestionably, the commissioners are the agents and representatives of the county for the management of any litigation to which it is a party, and ordinarily it is for them to determine what, if any, defence shall be presented in an action brought against it, and to instruct the county solicitor as to what course he shall take therein. As pointed out in the veto above referred to, great practical inconvenience would follow if another officer were invested with an equal right to make defences in every case. But there may be cases in which, as the defence sought to be made by the controller is based upon the provisions of the Controller Act itself and grounded upon an alleged violation by the commissioners of provisions therein contained, and with the enforcement whereof the controller is under the act officially concerned, and where the circumstances are such that, if he be not permitted to call such defence and the facts upon which it rests to the attention of the court, the purpose of these provisions and the check which they give to the controller upon the actions of the commissioners would be rendered futile. The petition in this case sets forth in substance that the plaintiff's claim is in part based upon contracts for the purchase of materials made in violation of section 10 of the act; that, in consequence of such violation, the county will suffer a pecuniary loss if the prices at which those contracts were made should be paid; and that the commissioners will not interpose any defence nor offer any objection or contest in this suit. For the purpose of the petition, these averments are admitted by the demurrers. The question presented is, therefore, this: When the county is sued upon a contract alleged by the controller to have been illegally made in the commissioners' office, and the commissioners propose not to interpose any defence for the purpose of having its legality passed upon, but to suffer the plaintiff to recover a judgment, without contest, for the full amount of the claim (which judgment could not afterwards be collaterally questioned: Com. v. Underwood, 269 Pa. 36), is it proper to permit the question of the legality of the commissioners' act to be raised in the suit, before judgment, by the controller? In our opinion, a reasonable view of the purposes, intent and implications of the provisions and general scheme of the Controller Act requires us to answer this question in the affirmative. The act gives to the controller "general supervision and control of the fiscal affairs of the county and official acts of all officers" charged

Lewis Paint and Glass Company v. Washington County.

with the custody, management or distribution of the county's moneys; enjoins on him to report to the Court of Common Pleas "any default or delinquency" which he may discover; requires his countersignature on warrants for the payment of money out of the county treasury, and imposes upon him the duty of scrutinizing, auditing and passing upon all claims and demands before payment; gives him specific functions in connection with the letting of contracts for over $100, and directs that he shall not certify for payment any warrants based upon contracts not made in conformity with the requirements of section 10.

These provisions of the statute and its general scheme and scope appear to us to show that the controller was intended to be, in the words of the Governor, "a check upon the action of the commissioners" within the limits above indicated; that it was intended that he should have official standing to initiate such proceedings as may be requisite to cause the requirements of the act to be obeyed and enforced, or to prevent the occurrence of the results, detrimental to the county, which the regulations contained in the enactment were designed to guard against. The implication is that he shall, to this end, have a standing to invoke action of the court for the county's protection, when this becomes necessary for the preservation of her rights under this statute. If this be not so—if, in case a contract has been made in violation of the act, the controller is not competent to interpose, with leave of the court, for the purpose of preventing the recovery, by sufferance of the commissioners, of a judgment which would be a collaterally unimpeachable adjudication that the recovery is based upon a legal and valid contract—a considerable part of the act might just as well not have been passed, because, in that event, the controller would cease to be an effective check. For example, the direction that he shall by his countersignature certify for payment no claim upon a contract not made in conformity with the statute's requirements could be completely evaded. In our opinion, in order to render effectual the general intent and purpose of the statute, it is necessary to hold that the court has power, upon a proper showing, to permit the controller to allege and prove such a defence as is stated in the petition now before us (when the commissioners themselves will not set it up), and, in view of the state of facts which the demurrers admit, we deem it our duty to grant such permission in the present case.

We express no opinion upon the merits of the case. Whether the actual facts are such that the plaintiff is legally and justly entitled to recover the whole of his demand, or the contrary—whether the objections of the controller to the payment thereof are well-founded or ill-founded and captious—we are not now in a position to determine. All that we now decide is that such a showing has been made as to render it proper to allow the validity of the claim, and the question whether the county has a legal defence thereto, in whole or in part, to be judicially investigated.

And now, Aug. 30, 1926, after argument and due consideration, it is ordered that T. J. Underwood, County Controller, be permitted to appear and file, within fifteen days, an affidavit setting forth, on behalf of the County of Washington, the defence to the plaintiff's claim which is mentioned in his petition, and that he be permitted, at the trial of the case, in the name and on behalf and for the benefit of the county, to present testimony and documentary evidence, or either, in support of the facts, alleged by him, constituting the basis of said defence, or in contradiction of any testimony which may be presented by the plaintiff.

From Harry D. Hamilton, Washington, Pa.